BLAKE GEORGE, on behalf of himself and
all others similarly situated,

     Plaintiff,

 v.

JAGUAR LAND ROVER NORTH
AMERICA LLC,

     Defendant.

Civil Action No.:  2:20-cv-17561

**CLASS ACTION COMPLAINT**

The allegations herein are based on personal knowledge as to Plaintiff's own conduct and are made on information and belief as to all other matters based on an investigation by counsel.

**INTRODUCTION**

1. Plaintiff Blake George ("Plaintiff") brings this class action individually and on behalf of all persons in the United States who purchased or leased new or certified pre-owned Land Rover models[1] and Jaguar models[2] optioned with the InControl Touch Pro and InControl Touch Pro Duo infotainment systems (hereinafter, "InControl Infotainment Systems") (collectively, the "Class Vehicles").  All Class Vehicles were designed, manufactured, distributed, marketed, sold, and/or leased by Defendant Jaguar Land Rover North America LLC, (hereinafter "Jaguar Land Rover," "JLR," or "Defendant").

2. Consumers purchase the Class Vehicles in part due to the prestige, luxury, and

---

[1] Land Rover models include the 2018-2020 Range Rover, 2018-2020 Range Rover Sport, 2018-2020 Range Rover Velar, 2018-2021 Range Rover Evoque, 2018-2020 Discovery, and 2018-2020 Discovery Sport.
[2] Jaguar models include: 2018-2020 E-Pace, 2018-2020 F-Pace, 2018-2020 I-Pace, 2018-2020 F-Type, 2018-2020 XE, 2018-2020 XF, and 2018-2020 XJ.

technological prowess a Land Rover and Jaguar vehicle instills. In modern vehicles, one of the focal interactions between a user and the vehicle is the infotainment system. In the Class Vehicles, for instance, the InControl Infotainment Systems control everything from the radio and air conditioning, to navigation, reverse cameras, and seat settings. Undoubtedly, the InControl Infotainment Systems are beautiful to look at, befitting of the prestige of the Land Rover and Jaguar brands as well as the extra cost of the vehicles and the InControl options. However, the InControl Infotainment Systems simply do not function as advertised and are thereby defective.

3. The InControl Infotainment Systems are simply unreliable and defective. As discussed in this complaint the systems regularly freeze, have reduced functions, refuse to startup, or most commonly simply show a black screen (hereinafter, the "InControl Defect"). The Plaintiff and Class members then are left with little more than a barely operable vehicle that is at the least distracting and frustrating, if not dangerous because of non-functioning HVAC, reverse cameras, or handsfree calling. As documented in this complaint, Defendant has been aware of the InControl Defect for years, even before Plaintiff's and Class members' purchases of the Class Vehicles. However, to this day, Defendant has not fixed the Class Vehicles.

4. All of the claims asserted herein arise out of Jaguar Land Rover's design, manufacture, sale and/or warranting of Class Vehicles equipped with InControl Infotainment Systems. Plaintiff and Class members assert claims against Defendant for breach of express warranties, implied warranties, violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.*, unjust enrichment, breach of the implied covenant of good faith and fair dealing, and violation of the New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-1, *et seq.*

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal

question).  This Court has jurisdiction over supplemental state law claims pursuant to 28 U.S.C. § 1367.

6.      This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2).  The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which there are more than 100 Class members, members of the Classes (as defined below) are citizens of states different from Defendant, and greater than two-thirds of the members of the Classes reside in states other than the states in which Defendant is a citizen.

7.      Venue properly lies in this District pursuant to 28 U.S.C. § 1391(a), (b) and (c) because Jaguar Land Rover North America LLC is incorporated in New Jersey.  Also, Defendant marketed, advertised, sold, and/or leased the Class Vehicles within this District through numerous dealers doing business in the District.  Defendant's actions have caused harm to Plaintiff George, a Michigan resident, as well as hundreds of Class members residing in New Jersey, Michigan, and the across the country.  Additionally, Jaguar Land Rover maintains its headquarters in Mahwah, New Jersey.  Defendant's contacts with this District are therefore sufficient to subject Defendant to personal jurisdiction in the District and venue is proper.

## PARTIES

### I.    Plaintiff

8.      Plaintiff Blake George is a citizen of the State of Michigan and resides in West Bloomfield, MI.  In or around September 2018 Plaintiff George purchased a 2019 Land Rover Range Rover equipped with an InControl Touch Pro Duo from Land Rover Troy, a Land Rover authorized dealer in Troy, MI, for personal or household use.

9.      When Plaintiff George bought his vehicle, he did not know it contained the

InControl Defect. Plaintiff George has experienced the InControl Defect regularly since owning the vehicle. Plaintiff George's first incident was in or before November 2018, when the vehicle had about 2000 miles. To this day, even after numerous updates and a service on November 10, 2020, the InControl Defect occurs almost every time Plaintiff George's vehicle is started. The InControl Defect has occurred within the warranty period.

10. Plaintiff George would not have purchased the vehicle, or would not have purchased it on the same terms, if Defendant had disclosed the InControl Defect. The Class Vehicles were operated in a reasonably foreseeable manner and as the vehicles were intended to be used. Plaintiff and Class members have suffered an ascertainable loss as a result of Defendant's deceptive conduct, breach of warranty, common law and statutory duties, and omissions associated with the InControl Defect, including but not limited to, out-of-pocket losses and/or the costs of future repairs or replacements, and diminished performance and value of their respective vehicles.

11. Neither Defendant nor any of its agents, dealers, or other representatives informed Plaintiff and Class members of the InControl Defect before they purchased or leased the Class Vehicles, or at any time since.

## II.  Defendant

12. Defendant Jaguar Land Rover North America, LLC, is a limited liability company, organized and in existence under the laws of the state of New Jersey. Jaguar Land Rover's corporate headquarters are located at 100 Jaguar Land Rover Way, Mahwah, New Jersey. Jaguar Land Rover is the distributor and warrantor of the Class Vehicles in the United States.

13. At all relevant times, Defendant was engaged in the business of marketing,

4

advertising, distributing, selling, and warranting automobiles, other motor vehicles and motor vehicle components in New Jersey and throughout the United States of America.

14.     At all times relevant to this action, Defendant manufactured, distributed, sold, leased, and/or warranted the Class Vehicles under the Jaguar, Land Rover, and Range Rover brand and model names throughout the United States.  Defendant and/or its agents designed, manufactured, and/or installed the InControl Infotainment Systems in the Class Vehicles. Defendant and/or its agents also developed and disseminated the owner's manuals and warranty booklets, USA Warranty and Maintenance schedules, advertisements, and other promotional materials relating to the Class Vehicles.

15.     Defendant also provides service and maintenance for the Class Vehicles through its extensive network of hundreds of authorized dealers and service providers nationwide.  At all relevant times, each of the Jaguar and Land Rover authorized dealership and service provider acted as an authorized agent, representative, servant, employee and/or alter ego of Jaguar Land Rover North America LLC while performing activities including but not limited to advertising, warranties, warranty repairs, dissemination of technical information and monitoring the performance of Jaguar and Land Rover vehicles in the United States, including substantial activities that occurred within this jurisdiction.

16.     Defendant has failed to provide a meaningful resolution to this unreliable and dangerous issue for all Class Vehicles.

**PRE-SUIT NOTICE**

17.     Plaintiff George provided pre-suit notice to Defendant before filing this lawsuit via letter dated September 23, 2020.  The pre-suit letter provided notice of breaches of warranty under state consumer protection statutes, state warranty laws, and the Magnuson-Moss Warranty

Act.  His pre-suit letter also served as notice pursuant to the New Jersey Consumer Fraud Act,

the New Jersey Truth-In Consumer Contract Warranty and Notice Act, and the consumer

protection statutes of all other states.  Plaintiff George sent his pre-suit letter on behalf of himself

and all other similarly situated persons in the United States who purchased or leased a Jaguar or

Land Rover with the InControl Defect, and alternatively, on behalf of all people in New Jersey

and Michigan who purchased or leased a Jaguar or Land Rover with the InControl Defect.

Defendant received and responded to the letter before this action was filed.

## FACTUAL ALLEGATIONS

### I. The InControl Infotainment Systems Are Substantially Similar Across The Class Vehicles

18.    Defendant sells its Jaguar and Land Rover vehicles with InControl Infotainment

Systems.  In a nutshell, these systems provide a centralized computer for controlling many

aspects of the car, such as radio or other media, smartphone integration, heating or air

conditioning, and navigation.  On the Land Rover website, for example, Defendant says the

system can "connect[] you and your vehicle to the world. From calls, media and navigation, to

climate control, driver settings and remote access via your smartphone, InControl brings the

latest in seamless, intuitive connectivity."[3]  The Jaguar website states much of the same, stating

InControl is "designed to make driving more enjoyable, Touch and Touch Pro™ deliver our

most advanced car infotainment systems ever.  Connect your smartphone to access apps, enjoy

music through the high-quality sound system and navigate your world.[4]

19.    Consistent with Jaguar and Land Rover's overall branding, the InControl

Infotainment Systems are marketed as high-end systems.  Defendant advertises the systems to

---

[3] https://www.landroverusa.com/ownership/incontrol/infotainment.html
[4] https://www.jaguarusa.com/incontrol/incontrol/infotainment.html

"look[] and perform[] like no other infotainment system.  Delivering a wealth of information and entertainment, it features the most intuitive and advanced integrated technologies."  These systems are touted as the "most advanced" infotainment systems, with the "most control" and most features.[5]

20.     The InControl Touch Pro and InControl Touch Pro Duo infotainment systems are described collectively here as "InControl Infotainment Systems" because they are substantially similar in all material respects.  The InControl Infotainment Systems are advertised with the same taglines and information, and are uniformly marketed under the "InControl" moniker.  The InControl Infotainment Systems have the same or substantively similar software for which Defendant has troubleshooted under the similar or the same TSB's.  *See* NHTSA TSB #10168929 released on November 18, 2019.

21.     The Monroney labels or window stickers affixed to each Class Vehicle sold highlighted the InControl system as a selling feature.  Each Monroney sticker affixed to the Class Vehicles constitutes an express warranty from Defendant.  The below excerpts of Monroney stickers are representative examples of the warranties Defendant made to the class.  These partial representations also created a duty to disclose the InControl Defect.  The partial representations and omissions on the Monroney stickers for all other Class Vehicles were the same or substantially similar, and in no case did Defendant ever disclose the InControl Defect.

22.     For instance, the window sticker for the 2020 Range Rover Sport HSE, identifies the InControl Protect as a "Safety, Security & Driving Aid:"

---

[5] (https://www.landrover-me.com/en/ownership/incontrol/support/faq/incontrol-touch-pro-faqs.html);
(https://www.jaguarusa.com/all-models/xe/features/in-car-technology.html)

**Safety, Security & Driving Aids**
Front & Side Airbags, Perimetric Alarm
InControl Protect™ (Emergency Collision Notification, Stolen Vehicle Locator)
Tire Pressure Monitoring System
Rear ISOFIX System for Child Seats
Electronic Traction Control, Dynamic Stability Control, Roll Stability Control
Emergency Braking, Anti-Lock Braking System, Emergency Brake Assist
Cruise Control
Rear View Camera
Lane Keep Assist
Park Pack
(360° Parking Aid, Rear Traffic Monitor, Clear Exit Monitor)
Drive Pack
(Blind Spot Monitor, Driver Condition Monitor, Traffic Sign Recognition &
Adaptive Speed Limiter)

And further identifies the "10" Touch Pro Duo System" as a "Comfort & Convenience" feature:

**Comfort & Convenience**
Premium LED Headlights w/Signature Daytime Running Lights
Powered Gesture Tailgate
Fixed Panoramic Roof w/Power Sunblind
Rain Sensing Windshield Wipers, Rear Wiper
Auto-dim, Power-fold, Heated Exterior Door Mirrors w/Memory & Approach Lights
Windsor Leather Seats
Heated Power Front Seats w/Lumbar & Memory
Split Fold Rear Seats
Power Adjustable Leather Steering Wheel
Carpet Mats, Aluminum Treadplates
Two-Zone Climate Control
Ambient Interior Lighting
Auto-dimming Interior Rear View Mirror w/HomeLink® Garage Door Opener
Keyless Entry, Push Button Start, InControl Remote™ (Remote Start)
10" Touch Pro Duo System w/Navigation Pro, Pro Services
Meridian™ Sound System (380W), WiFi Hotspot (w/limited data trial)
SiriusXM® All Access Package w/3 month trial period & HD Radio™
Apple CarPlay®, Android Auto™
Interactive Driver Display, Bluetooth® & USB Ports

23.     The only differences between the InControl Touch Pro and InControl Touch Pro Duo infotainment systems are screen sizes and minor stylistic user interface differences such as badging icons, fonts, etc.  All of the InControl Touch Pro and InControl Touch Pro Duo systems, whether on a Jaguar or a Land Rover model, suffer the same InControl Defect.  Any differences between the InControl Touch Pro and InControl Touch Pro Duo systems have no bearing on the InControl Defect.

24.     The standout feature of the InControl Touch Pro systems is their interface and software which are substantively similar for all systems.  The InControl Touch Pro layout in a Land Rover looks like this:



25.     The InControl Touch Pro layout in Jaguar looks like this:



26.     The InControl Touch Pro Duo layout in a Land Rover looks like this:



27.     The InControl Touch Pro Duo layout in a Jaguar looks like this:



## II.     The InControl Infotainment Systems Do Not Function As Represented And Pose A Safety Risk

28.      InControl Infotainment Systems suffer from the InControl Defect, which causes the systems to irregularly startup or not display information properly, resulting in the system becoming unavailable during normal use.  One or more of the control screens of the user interface appear as blank, or black, during normal use and the user interface does not respond to user input or is slow to respond.  Other symptoms include crash loops and inaccessibility to features such as reverse cameras, among others.

29.      A good example of many of the common problems, of which the Plaintiff has also experienced, were posted by "dc" on the website YouTube on November 6, 2018.[6]  Some of the common problems, among others, highlighted include:

> 0m00s: Camera Subsystem Failure
>
> 1m58s: Terrain Response Failure
>
> 2m24s: System Initialization Failure (top screen off)
>
> 3m16s: Top Screen Position Incorrect
>
> 3m33s: Media/Radio problems (also, no park distance audio)
>
> 4m07s: Crash Loop

30.      The InControl Defect poses a safety risk because when the system malfunctions, unexpected audio or video errors can cause the driver to become distracted.  The InControl Defect can also cause safety-related systems (including backup camera functions) to fail.  For instance, users cannot access HVAC controls in climates where the lack of HVAC can be dangerous.  As another example, users cannot use the Bluetooth connection for hands-free calls

---

[6] https://www.youtube.com/watch?v=X8A1fpe_aHY

as required in most states when operating their cell phones. A "hands-free" interface in the Vehicles makes for safer driving, allowing a driver to make calls with both hands on the wheel and eyes on the road. Indeed, in many states, including New Jersey, a driver is not permitted to use a phone while driving unless they are making calls "hands-free."

31. The InControl Defect is inherent in the design, manufacture, materials and/or workmanship of the Vehicles' electrical system and/or infotainment system, and Defendant has not been able to correct the problem.

32. The InControl Defect, which existed at the time of sale, also renders the Class Vehicles unfit for their ordinary purpose because the Class Vehicles cannot be counted upon to provide safe and reliable transportation.

33. Defendant has not found a solution to the InControl Defect. Instead, Defendant tells Vehicle owners to wait for a forthcoming "software updates" to fix the infotainment problems, or alternatively simply replaces defective parts with equally defective parts, thereby leaving consumers caught in a cycle of use, malfunction, and replacement.

### III.    Defendant's Knowledge Of The InControl Defect

34. Defendant knew about the defect well before the Vehicles' launch, and in no event later than September 2018, from multiple sources. These sources include pre-release design, manufacturing, and testing data; warranty claims data; consumer complaints made directly to Defendant, collected by the National Highway Transportation Safety Administration ("NHTSA"), and/or posted on public online forums; testing done in response to those complaints; aggregate data and complaints from authorized dealers; and other sources. Yet Defendant failed to disclose and actively concealed the InControl Defect from the public, and continues to manufacture, distribute, and sell the Vehicles without disclosing the defect.

### 1. Technical Service Bulletins

35.     Defendant's knowledge is demonstrated, in part, by the fact that it has issued multiple Technical Service Bulletins ("TSBs") and even had an active program to troubleshoot and log customer complaints regarding the InControl Defect.  The TSBs show that throughout the last few years, all of Defendant's fixes have either been failures.

36.     On August 15, 2018, TSB 10146022 directed towards Jaguars described how "InControl® Touch Pro™ Features May Not Function As Expected," stating, "[i]n response to customer feedback on the performance of the InControl® Touch Pro™ system, Jaguar Land Rover has developed a software update designed to enhance the robustness of a range of system features and functions."  That TSB did not solve the InControl Defect.

37.     On January 4, 2019, Defendant issued TSB 10153450 for Jaguars, which was titled "InControl® Touch Pro™ Features May Not Function As Expected."  A week later, on January 20, 2019, Defendant issued a similar TSB for Land Rovers titled "InControl Touch Pro as Inoperative."  Neither TSB solved the InControl Defect.

38.     Defendant issued TSB 10158979 on March 13, 2019, after an earlier software update failed to correct the InControl Defect.  That TSB stated it applied under the following circumstances: "Following a software update or an attempt to update the InControl Touch Pro system, one of the conditions listed below has been identified: 1. InControl Touch Pro system constantly restarting[;] 2. Voice / Speech concern[;] 3. Navigation concern[;] 4. Live and Web Browser concern[; and] 5. System Language concern."

39.     On November 18, 2019, Defendant issued TSB 10168929 for the InControl Defect in both Jaguar and Land Rover vehicles, indicating a uniform defect common across both brands of cars.

### 2. Warranty Claims Data

40.     Defendant also knew or should have known about the InControl Defect based on the large number of warranty repairs made immediately upon the Vehicles' launch. Upon information and belief, Defendant regularly compiles and analyzes detailed warranty service information regarding repairs performed under warranty at its network of dealerships. Indeed, Defendant requires dealers to maintain detailed and meticulous records for any warranty repairs performed and routinely refuses to pay for warranty repairs made where the nature and cause of the malfunction is insufficiently described.

41.     Upon information and belief, these dealer service records and warranty data reflect an abnormally large spike in infotainment system failures immediately following the launch of the Class vehicles.

### 3. Customer Complaints To JLR

42.     Defendant also maintains a webpage on its owners' website explaining how to report safety defects:[7]



### 4. Complaints To The National Highway Traffic Safety Administration

43.     Consumers have complained about the InControl Defect to the National Highway Traffic Safety Administration NHTSA.  Defendant monitors those complaints as part of a continuous obligation to identify potential defects in their vehicles, knowing that it is often the case that for every person who complains about a defect, there are many other people who experienced the same defect but who do not complain to NHTSA.

44.     Since 2017 at the latest, Defendant has constantly tracked the NHTSA database to track reports concerning problems with its vehicles, including problems with the InControl Infotainment Systems.  From this source, Defendant knew that vehicles were experiencing unusually high levels of problems with the InControl Infotainment Systems.

45.     Defendant also knew or should have known about the InControl Defect because of the similarity of complaints.  The fact that so many customers made similar complaints indicates that the complaints were not the result of user error or anomalous incidents, but instead a systemic problem with the Class Vehicles.  Here, the reports and complaints from consumers were similar enough to put Defendant on notice that the incidents described were the result of a defect, and that the Class Vehicles were experiencing unusually high levels of complaints about the InControl Infotainment Systems.

46.     Examples of the complaints to NHTSA are shown below:

*2018 Land Rover Range Rover*

**Date of Complaint**: August 24, 2018

**NHTSA ID NUMBER**: 11122246

**Incident Date:** August 21, 2018

**Consumer Location:** WESTON, MA

15

**Vehicle Identification Number:** SALGS2SV2JA****

**Summary of Complaint:** THE INFOTAINMENT MEANT SYSTEM WHICH IS THE BRAINS OF THE CAR IS CONSTANTLY FAILING TO OPERATE PROPERLY. THE SCREEN FREEZES LEAVING INABILITY TO CONTROL A/C, RADIO, BLUETOOTH PHONE, CLIMATE, BACK UP CAMERAS. THIS VEHICLE HAS 4500 MILES ON IT AND HAS BEEN IN FOR SERVICE 3 TIMES, IT IS NOW BACK AT THE DEAL A 4TH TIME. THE COMPUTER IS ERRATIC AND CONSTANTLY NEEDS TO UPDATED. THERE HAVE BEEN 4 UPDATES SINCE I HAVE OWNED THE VEHICLE WHICH WAS IN FEB 2018. LANDROVER IS FULLY AWARE OF THE ISSUES BUT REFUSES TO DO ANYTHING ABOUT IT. I HAVE TRIED REPURCHASE AND REPLACEMENT, WHICH WAS DENIED AND NOW I HAVE TO GO TO ARBITRATION WITH THE STATE LEMON LAW. THE CARS COMPUTER IS AN EPIC FAILURE AND CROSSES OVER TO MOST OF THE 2018 LANDROVERS . THESE FAILURES HAPPEN AT ANY TIME , THEY HAVE OCCURRED WHILE STOPPED AT LIGHTS, IN STANDSTILL TRAFFIC, WHEN TURNING THE CAR ON, OR JUST WHEN DRIVING. THERE IS ALWAYS ANOTHER SURPRISE WAITING WHEN I GET IN MY CAR.


**Date of Complaint**: February 27, 2018

**NHTSA ID NUMBER:** 11075190

**Components:** ELECTRICAL SYSTEM

**NHTSA ID Number:** 11075190

**Incident Date**: February 17, 2018

**Consumer Location:** WASHINGTON, DC

**Vehicle Identification Number:** N/A

**Summary of Complaint:** AFTER ONLY FIVE DAYS OF OWNERSHIP, MAJOR COMPONENTS OF THE ELECTRICAL SYSTEM FAILED, PARTICULARLY THE DISPLAYS ON ALL OF THE DRIVER INFORMATION SYSTEMS, INCLUDING ASSISTIVE SERVICES SUCH AS LANE DETECTION. THE SERVICE CENTER FIRST STATED THAT THE PROBLEM EAS SERIOUS AND RELATED TO FAULTY WIRING FROM THE FACTORY. THEY NOW CONTEND THAT THERE IS FAULTY SOFTWARE CAUSING THE SYSTEM TO FAIL.

*2018 Range Rover Sport*

**Date of Complaint**: April 1, 2019

**NHTSA ID NUMBER:** 11193009

**Components:** ELECTRICAL SYSTEM, VISIBILITY/WIPER, UNKNOWN OR OTHER

**NHTSA ID Number:** 11193009

**Incident Date:** August 1, 2018

**Consumer Location:** RALEIGH, NC

**Vehicle Identification Number:** SALWV2SV0JA****

**Summary of Complaint:** LOWER SCREEN MODULE IS GOING OUT


**Date of Complaint**: April 1, 2019

**NHTSA ID NUMBER:** 11193008

**Components:** ELECTRONIC STABILITY CONTROL, VISIBILITY/WIPER, UNKNOWN OR OTHER

**NHTSA ID Number:** 11193008

**Incident Date:** July 3, 2018

**Consumer Location:** RALEIGH, NC

**Vehicle Identification Number:** SALWV2SV0JA****

**Summary of Complaint:** THE BOTTOM SCREEN MODULE IN MY VEHICLE IS CONSTANTLY GOING OUT. I'M NOT ABLE TO OPERATE ANY OF MY CONTROL FEATURES IN THE VEHICLE. I'VE CONTACTED THE MANUFACTURER AND I HAVE YET TO RECEIVE ANY ASSISTANCE IN PREVENTING THIS ISSUE OR FIXING THIS ISSUE. THE SCREEN CONTROLS THE HEATING, AIR AND OTHER SAFETY OPTIONS SUCH AS THE DRIVE MODE, DEFROSTER AND ETC.


*2018 Range Rover Velar*

**Date of Complaint**: June 15, 2019

**NHTSA ID NUMBER:** 11220359

**Components**: ELECTRICAL SYSTEM, VISIBILITY/WIPER

**NHTSA ID Number:** 11220359

**Incident Date:** October 8, 2018

**Consumer Location:** BRONX, NY

**Vehicle Identification Number:** N/A

**Summary of Complaint:** THE SOFTWARE OF THE CAR HAS A LOT OF BUGS. THE DISPLAYS ON THE CENTER CONSOLE TURNS OFF , THE RADIO

CONNECTION COMES AND GO AND THIS IS IN NYC. A FRIEND HAD HIS 2015 BMW TO SAME RADIO STATION AS MY CAR AND THEY WERE RIGHT NEXT TO EACH OTHER. I WAS NOT GETTING ANY SIGNAL WHILE HIS WAS PLAYING. THE CAR FOGS AND MAKES IT VERY HARD TO SEE AND DRIVE. I HAD TO TAKE THE CAR IN FOR SERVICE 4 TIMES IN ONE DUE TO THIS AND SOFTWARE ISSUE.

**Date of Complaint**: January 10, 2019

**NHTSA ID NUMBER:** 11166369

**Components:** ELECTRICAL SYSTEM, VISIBILITY/WIPER

**NHTSA ID Number:** 11166369

**Incident Date:** January 10, 2019

**Consumer Location:** IRMO, SC

**Vehicle Identification Number:** SALYL2RX3JA****

**Summary of Complaint:**1. CAR WINDOWS DO NOT DEFROST WHEN DRIVING IN COLD WEATHER. ESPECIALLY THE SIDE WINDOWS GREATLY EFFECTING VISIBILITY IF HAVING TO TURN OR CHANGE LANES  2. LOWER ELECTRICAL PANEL GOES OUT RANDOMLY WHILE DRIVING. THIS MAKES YOU UNABLE TO REGULATE TEMPERATURE OR CHANGE DRIVING TYPE.

**Date of Complaint**: July 30, 2018

**NHTSA ID NUMBER:** 11114677

**Components:** ELECTRICAL SYSTEM, UNKNOWN OR OTHER

**NHTSA ID Number**: 11114677

**Incident Date:** July 1, 2018

**Consumer Location**: BLOOMFIELD HILLS, MI

**Vehicle Identification Number:** N/A

Summary of Complaint: WHEN TRYING TO DRIVE MY WIFE'S VEHICLE THE GAUGES FOR SPEED, TACHOMETER, VEHICLE STATUS ETC TURN OFF. THE TWO TOUCH SCREENS ALSO TURN OFF SO CANNOT CONTROL ANY CLIMATE, RADIO, DRIVE SETTINGS ETC. IT WILL COME ON INTERMITTENTLY AND TURN BACK OFF WITHOUT WARNING. THE CAR STILL OPERATES BUT WITHOUT ANY INSTRUMENTATION. UNKNOWN HOW THIS AFFECTS SAFETY FEATURES SUCH AS AIRBAGS.WHEN MY WIFE DRIVES IT IS LESS INTERMITTENT BUT HAPPENS FROM TIME TO TIME. IF I

ATTEMPT TO START THE CAR SOMETIMES IT WON'T EVEN TURN ON BUT AFTER A COUPLE MINUTES I CAN GET IT TO START. IT IS PUSH BUTTON. HAVE TRIED BOTH SET OF KEYS.

*2019 Range Rover Sport*

**Date of Complaint**: October 4, 2019

**NHTSA ID NUMBER**: 11266092

**Components**: ELECTRICAL SYSTEM

**NHTSA ID Number:** 11266092

**Incident Date:** September 30, 2019

**Consumer Location**: PACIFIC PALISADES, CA

**Vehicle Identification Number:** SALWR2RV5KA****

**Summary of Complaint:** ALL THE SCREENS (3) WITHIN THE CAR AS SUBJECT TO FREEZING, OR COMPLETE FAILURE. THIS INCLUDES THE MAIN SPEEDOMETER SCREEN, THE CLIMATE CONTROL SCREEN, THE ENTERTAINMENT SCREEN, THE BLUETOOTH FUNCTION, THE LANE CHANGE ASSISTANCE WITHIN THE REAR VIEW MIRRORS. THIS ISSUE IS PREVALENT IN ALL RANGE ROVERS, RANGE ROVER SPORTS AND VELARS, AND THERE ARE MULTIPLE FORUMS ON THE INTERNET ABOUT THE ISSUE. IT HAS EXISTED FOR OVER 2 YEARS YET LAND ROVER CONTINUE TO SELL THE CARS WITHOUT DISCLOSING THE ISSUE TO BUYERS AND AS OF TODAY, HAVE NO FIX FOR THE PROBLEM, AS CONFIRMED BY LAND ROVER NORTH AMERICA. THESE FAULTS CAN OCCUR AT ANY TIME, WITH NO PATTERN, AND NO WARNING. AS AN EXAMPLE, WHEN THE CLIMATE CONTROL SCREEN FREEZES, THE WINDSCREEN CANNOT BE CLEARED IF FOGGED UP AS THE ENTIRE SYSTEM IS INACCESSIBLE, WHICH CAN BE HIGHLY DANGEROUS IN BAD WEATHER. LAND ROVER'S ONLY ADVICE IS TO "PULL OVER, SHUT THE VEHICLE DOWN, WAIT APPROX 10 MINS, AND RESTART THE VEHICLE", WHICH IS NOT ALWAYS POSSIBLE ON A FREEWAY ON A COLD DARK NIGHT.

*2020 Range Rover Sport*

**Date of Complaint**: March 27, 2020

**NHTSA ID NUMBER:** 11319464

**Components:** ELECTRONIC STABILITY CONTROL, ELECTRICAL SYSTEM, VISIBILITY/WIPER

**NHTSA ID Number:** 11319464

**Incident Date:** January 26, 2020

**Consumer Location:** MOUNT PLEASANT, SC

**Vehicle Identification Number:** SALWR2SE5LW****

**Summary of Complaint:** I HAVE HAD OVER 8 INSTANCES WITH EITHER THE LOWER SCREEN, UPPER SCREEN OR BOTH SCREENS COMPLETELY BLACKING OUT AND BEING INOPERABLE. LANDROVER HAS HAD 4 ATTEMPTS TO FIX IT UNSUCCESSFULLY WITH LANDROVER CORPORATE INVOLVED. IN ADDITION, THE SIDE VIEW MIRRORS DIP DOWN IN REVERSE AND DID NOT CORRECTLY RESET THEIR POSITION ONCE IN DRIVE SO I HAD ZERO VISIBILITY IN DRIVE IN EITHER SIDE VIEW MIRRORS. THE SCREEN ISSUES HAS OCCURRED ON CITY STREETS AND ON THE HIGHWAY. THE SIDE VIEW MIRRORS OCCURRED ON CITY STREETS. IN ADDITION I LOSE ALL CONTROL WHEN THE SCREENS BLACK OUT TO CONTROL THE CLIMATE, THERMOSTAT TEMPERATURE, DRIVER MODES, ROCK CRAWL MODE, AND MORE. I SENT LAND ROVER CORP OVER 2 DOZEN PICTURES AND VIDEOS DOCUMENTING EACH TIME IT OCCURRED. THE FIRST ISSUE HAPPENED IN JANUARY 3 WEEKS AFTER BUYING THE CAR AND THEY'VE CONTINUED THROUGHOUT FEBRUARY AND NOW ARE STILL CONTINUING INTO MARCH. I FILED A COMPLAINT WITH CORPORATE ASKING FOR A CORPORATE BY BACK UNDER THE LEMON LAW WHICH WAS DENIED. I PAID 97,000 FOR THIS VEHICLE AND THE ONLY THING THEY OFFERED WAS ONE MONTHS FREE FINANCE PAYMENT OF $993. THE CAR IS NOT SAFE TO DRIVE!

*2018 Jaguar F-Pace*

**NHTSA ID Number:** 11122822

**Incident Date March:** 1, 2017

**Consumer Location:** MANALAPAN, NJ

**Vehicle Identification Number:** N/A

**Summary of Complaint:** TL* THE CONTACT OWNS A 2018 JAGUAR F-PACE. WHILE DRIVING VARIOUS SPEEDS, THE INFOTAINMENT SCREEN SEIZED AND CAUSED THE BACKUP CAMERA TO BECOME INOPERABLE WHILE THE VEHICLE WAS IN THE REVERSE POSITION. WHILE THE VEHICLE WAS IN MOTION, THE FAILURE CAUSED ALL OF THE LIGHTS ON THE INSTRUMENT PANEL TO TURN OFF. THE VEHICLE WAS TAKEN TO JAGUAR MORRIS COUNTY (275 MAIN ST, MADISON, NEW JERSEY 07940, (973) 377-0240) WHERE A SOFTWARE UPDATE WAS PERFORMED. THE VEHICLE WAS TAKEN TO

JAGUAR FREEPORT (146 WEST SUNRISE HIGHWAY, FREEPORT, NEW YORK 11520, (516) 771-9700) AND THE BATTERY WAS DISCONNECTED FROM THE ELECTRICAL SYSTEM. IN ADDITION, THE DEALER PERFORMED A HARD RESET. THE MANUFACTURER WAS MADE AWARE OF THE FAILURE AND REPLACED THE VEHICLE TWICE, BUT THE FAILURE RECURRED. THE FAILURE MILEAGE WAS APPROXIMATELY 22,000. THE VIN WAS NOT AVAILABLE.

### 5. Customer Complaints On The Internet

47.     Defendant would have been aware of customer complaints about the InControl Defect for many years as a result of its online reputation management (or "ORM") efforts. ORM is now a standard business practice among most major companies and entails monitoring consumer forums, social media and other sources on the internet where consumers can review or comment on products. "Specifically, [online] reputation management involves the monitoring of the reputation of an individual or a brand on the internet, addressing content which is potentially damaging to it, and using customer feedback to try to solve problems before they damage the individual's or brand's reputation."[8] The growth of the internet and social media, along with the advent of reputation management companies, has led to ORM becoming an integral part of many companies' marketing efforts.

48.     Owners have been complaining for years about the InControl Defect on YouTube, and Jaguar or Land Rover enthusiast websites. The number of complaints on YouTube and consumer forums about the InControl Defect is unusually high, especially when compared to other car manufacturers who offer their own infotainment systems. Defendant monitors these sources in connection with ORM activities because candid comments from Jaguar and Land Rover owners provide valuable data regarding quality control issues, customer satisfaction and marketing analytics. Defendant would therefore have seen complaints about the InControl

[8] https://en.wikipedia.org/wiki/Reputation_management#Online_reputation_management.

Defect when they first appeared online.

49.     For example, people have uploaded their problems with InControl Infotainment Systems on YouTube.  On May 5, 2018, a user posted a video titled "2018 Range Rover Velar Problems and Complaints: Screen Freezing."[9]  A year after posting, other users commented on the video, including some who continue to experience the screen failure, which is still very common in Class members and the Plaintiff's vehicle.  Similarly, on November 6, 2018, a user posted a video showing a host of problems with his InControl Infotainment Systems, including camera failure, system initialization failure, screen problems, problems with the radio, and crash loops.[10]

50.     Some users have dedicated entire YouTube channels to their problems with the Jaguar Land Rover vehicles, including the InControl Infotainment System.  For instance, a user started the channel "Land Rover - Range Rover Problems & Issues"[11] to "document the "ordeal" with his 2018 Range Rover Sport "purchased brand new on June 6, 2018" and with the "hope that someone at their corporate office takes issue with the problems they are having with their vehicles" and in the interest that the problems "do not get swept under the rug."  To date the channel has 174 subscribers, over 35 videos and almost 40,000 views.  One of those videos includes a description of the InControl Defect.

51.     In December 2018, a Jaguar owner in Germany posted a video documenting a "widespread bug" in his InControl Infotainment System, leaving "no infotainment controls whatsoever."[12]

---

[9] https://www.youtube.com/watch?v=50LJLDt4iaw
[10] https://www.youtube.com/ watch?v=X8A1fpe_aHY
[11] https://www.youtube.com/c/LandRoverRangeRoverProblemsIssues
[12] https://www.youtube.com/watch?v=wHwoVX6s2cI (Showing the Defect in an I-Pace)

52. Since the release of the systems, customers have also complained on Jaguar and Land Rover enthusiast websites like RangeRovers.net, I-Paceforum.com and others.

53. These complaints include many common failures, including the blank and black screen failure and even some owners who returned their vehicles over the problems.[13] Defendant monitors these websites because they are popular among U.S. Jaguar and Land Rover owners, and as a result would have seen complaints and concerns about the InControl Defect. Excerpted examples from numerous lengthy forum posts from many different users are included below[14]:

- My 2018 Sport is having the screen issues. Both screens short circuited and went into an endless reboot cycle. Brought it in to the dealer on Saturday - and they are unable to flash the computer. They have a new one on order that should hopefully be here sometime in the next week (I'll refrain from making a snarky Fedex comment.) Then reinstall the new computer, and flash to the latest version (which may or may not have any bug fixes, but is not the same as the original version my vehicle had, and is not the big update coming in the next few weeks.) Apparently, the same issue is happening to the dealership president's 2018 full sized RR. So there has been a lot of brainpower spent here getting it fixed

- Just took delivery of 2018 RRS SVR and screens started rebooting endlessly today after working without issue for a few days. Took it back to the dealer and they downloaded some update that didn't help. Now, they are going to try downloading a different update that takes longer and may need help from a remote tech.

- I believe this is very bad news for Land Rover. Buggy screens can cripple sales and ruin the brand. Land Rover needs to address this situation quickly. If not it will become a crisis for their image. Still and all, I wouldn't hold my breath on any immediate resolution coming soon. I would not make a purchase now, I would wait for the 2019 which should be bug free.

- Thank you everyone for sharing. I joined the forum immediately after reading the previous post. I just collected my 2018 RRS SCV8. I am super disappointed because I have the exact same issue with my dual screen infotainment system. I took delivery on Thursday evening March 1st. I really looked forward to personalizing my vehicle to my family's preference...Then my vehicle entered this vicious reboot cycle. I took my vehicle back to the dealer and the Service Manager checked to make sure that I had the latest SW level and tried a couple hard rests. Nothing worked. They will try to resolve this issue on Monday

[13] https://www.rangerovers.net/threads/2018-dual-monitor-issues.312129/
[14] https://www.rangerovers.net/threads/2018-dual-monitor-issues.312129/; https://www.i-paceforum.com/threads/screen-locks-frozen.5619/; https://www.i-paceforum.com/threads/display-panel-not-working-at-all.2215/

with "remote" Techs.

- Mine are doing the same thing. Rebooting but then turn on after 20 minutes. I got the patch from the dealership yesterday, made it worse. I'm going to bring it back Monday and tell them to keep it until it's fixed. Have had this car ten days. Could you guys keep us updated on replacing the computer if that solves the problem.

- I hope you are right on it being only software related. The dealer mentioned having to do another download to a different system and wanted help from the remote techs on Monday. They did update some part of the system; it took hours and did nothing to fix the problem. They said they had to order a replacement computer on a Jag and another RR that had similar issues.

- So I got the software patch this past weekend. Didn't work, made things worse. Then brought back to dealer Monday. They tried it again and this time it completely deleted all my settings and seemed to be a real reboot. Now everything is working perfectly. My mobile hotspot is working now too. The response time on The InControl Touch screen is faster. So far so good.

- Picked up the SVR yesterday. when starting the car there is about a minute or two of rebooting on the 2 main screens. this happened 2 out of the 3 times ive started the car. In addition the car keeps saying it isn't connected to the internet. Other than that the car works great

- Mine just started acting up again. Just brought it in for an update too. Doesn't seem to have solved  everything. Backup camera doesn't work sometimes Steering wheel controls don't work sometimes Got this strange screen just today! Lol

- While speaking at the dealership today, I mentioned about the screen issue. The "tech" guy their said an update was released to implement and fix the issue. But who knows...

- have my first RR 2018 sport, and unfortunately same issues. I brought in for the update, but hasn't fixed issues. It seems to get stuck in a state, and no traffic on nav, no map in display, and heads up doesn't work. Also had the audio problem. I am currently trying without connecting phone and without the RR apps. Seems without these, I can get unstuck by toggling the map on display. I had screens go black and come back next day, that happened once, they claim updated fixed, but need more run time. Very frustrating, hope they sort it out. Never sure what will work.

- Don't upgrade. Phase 4 is a hot pile of garbage and makes me want to lemon law this car. I just made another post about this. The screen issues is beyond stupid at this point. I've has the battery die, the radio stop working, Bluetooth and maps stop working, phone not work, cameras not work, parking seasons not make any noise. To add fuel to the fire they bricked my car last time and ended up replacing the ICM and putting Phase 4. The dash shows cars most of the time with no other data and the default for the lower screen while

is set to media/radio it opens to whatever it feels like when it boots. Doesn't matter what I select. It's like rolling the dice. Overall it's steaming pile of garbage and I would stay away from it. Basic functionality should be a requirement for a car this expensive.

- picked up my SVR two weeks ago and on the drive home from the dealership the lower screen went black after about 15 mins of driving! But I didn't freak out and I knew it would reset itself after stopping, getting out of the car, locking the doors then getting back in and restarting. Apparently there are like 7 computers (don't remember the exact number) that all have to do these handshakes with each other and clearly something can fail. The black lower screen has happened I think 2 more times in the two weeks I've had it. It's annoying but doesn't upset me very much as everything else is working great and it's relatively infrequent. After reading about other experiences on here I'm going to hold off on updating the system for a while (mine was built in March).

- Latest issues for me:* Infotainment didn't come on at all. Restarting car did nothing, had to let it go to "sleep". Radio was able to play, though. * Screen didn't tilt into my preferred setting. Turning the screen off and on fixed it. * Cameras haven't come on a couple times, but has generally self-healed much quicker than before.

- 2018 RRS SC has been in 3 times for different screen issues. Most recent update was Monday this week. Service guys try their best are apologetic and always bring me a loaner to my house for the swap. My buddy got the same vehicle but the Autobiography edition and has the same issues. Just a warning to those coming from Mercedes or other more reliable brands to go in with your eyes wide open. If having repeated failures on a 100K truck will upset you, think twice. Otherwise, it drives well and the interior is nice.

- I got my 2108 in May - everything was great until 4 weeks ago when the Navigation stopped working. I took it in and they said I needed a new module - they replaced it and did the 4.2 Now I have more problems. The Ambient lighting resets back to white. The back up screen periodically does not work. The radio/bluetooth disconnects. The speedo screen resets.

- I picked up my 2018 Autobiography in March this year so I'll be coming up on 7 months of ownership soon and I can say this RRS is nothing like my 2015 it's been to the dealer 6 time's for head unit related issue's such as the gauge cluster going completely black twice mid-drive, 360 surround view not showing up on UI, screen glitching/ freezing (which is an issue im still having), not being able to access climate control's and worst of them all was when the car was sitting for a day or two the gauge cluster was blank along with the entire UI and I had to start driving for about 5 to 10 minutes before they did the "start-up" like I just started the car (dealer fixed this). I'm nearing the end with my 2018 RR my car has 9k miles on it and about half of these miles has been me driving to and from the dealership, FYI these UI issues are the least of my problems with this car, I loved my 2015 that didn't have as near as many problems as this car and Im not trading it for someone else to get stuck with this car until all these issue's are resolved. The dealer is trying their absolute best to fix this car they have even gotten their top technician's to

look at it but to no avail. Im still in the process of making JLR return my call's. If they can fix my car then I'll be happy and keep it but if they can't just give me a replacement vehicle (not all car's are lemons and I just want another RRS but I'll happily take my refund and buy another RRS.) My wife's 2017 RR LWB Autobiography has been perfect.

- Had the 18C upgrade completed in early November. Really did not fix any glitches that I had. Took it back in this week and the result is to replace the Infotainment Master Controller. The controller should fix the intermittent shutting down and freezing of the system. It still will not correct the ambient lighting issue or the issue of "live" not being available. I will post an update after I get some miles on it.

- My main control screen froze showing the Jaguar logo. Wouldn't let me do anything. Car was on, was able to drive but nothing else. Did anyone have the same issue? Finally, reset after I turned it off and on twice.

- People have had different versions of this. Mine went dark (both middle screens) a few times and came back until it went dark and required a dealer visit to re-install the software.

- Can someone help My I pace is fully charged but both the upper and lower display panels are not turning on when i am driving

### 6. Pre-Launch Testing

54.     It is standard practice for automobile manufacturers to engage in extensive pre-launch testing of its vehicles.  Defendant would have done so for the defective Class Vehicles and tested the operation of the infotainment systems prior to selling the defective Class Vehicles. Given the immediacy and frequency of consumer complaints about the infotainment system contained in the defective vehicles, it is apparent that Defendant knew about the defect before the defective Class Vehicles were sold or leased.

55.     Moreover, during the decision-making process of designing the InControl Infotainment Systems, Defendant necessarily would have gained comprehensive and exclusive knowledge about the defect contained in the system.  Such knowledge would necessarily include: the basic programming principles behind the system; software bugs and resiliency; the forces and stresses the system faces in normal use; the cumulative wear on the system caused by use, age,

and environmental factors; and how using different designs affect the performance of the system. This design, engineering, and testing data is unavailable to Plaintiff without discovery, but upon information and belief, analysis of this data would have revealed that the infotainment system was insufficient for its intended use and would malfunction frequently.

56.     Similarly, approved Certified Pre-owned Class Vehicles go through a "strict 165-point inspection."[15]  Such inspections would have revealed the InControl Defect.

## IV.     Defendant Never Disclosed The InControl Defect To Consumers

57.     Defendant has never informed purchasers prior to sale that the Class Vehicles suffered from the InControl Defect, continues to sell the Class Vehicles impacted by the InControl Defect, and charges customers for attempts to repair the InControl Defect.

58.     Knowledge and information regarding the InControl Defect was in the exclusive and superior possession of Defendant and its network of authorized dealers.  Plaintiff and Class members were not told about the InControl Defect at the time of sale, no advertisements disclosed the InControl Defect, and the Monroney Labels did not disclose the InControl Defect. Prospective buyers would have no reason to seek out information about the InControl Defect because they would not known about it in the first place.

59.     Defendant concealed and failed to disclose the Defect, both at the time of sale or lease of the Class Vehicles either as new or certified pre-owned vehicles and on an ongoing basis, including but not limited to when the Class Vehicles were brought in for service.

60.      Defendant had and has a duty to fully disclose the true nature of the Defect and the associated repair costs to Class Vehicle owners, among other reasons, because the Defect poses an unreasonable safety hazard; because Defendant had and has exclusive knowledge or

---

[15] Jaguar and Land Rover CPO models are sold with the same 165-point inspection.

access to material facts about the Class Vehicles' infotainment systems and because Defendant have actively concealed the Defect from Class members.

61.     Class Vehicles for the 2018 through 2020 model years contain a defect (i.e., the InControl Defect) that Defendant has known about since at least 2017.  The InControl Defect cannot be detected until after it manifests, and therefore Plaintiff and other members of the proposed class were not reasonably able to discover the problem. These facts are supported by the above-described complaints to NHTSA, the above-described TSBs, and all other sources of information described above such as pre-release testing data, 165-point inspections for CPO vehicles, customer complaints, videos on YouTube, and warranty claims.

## V.     Defendant Breached Its Express And Implied Warranties

62.     In addition to breaching the express warranty on the Monroney label, Defendant also breached its express and implied warranties through which it promised to, inter alia, (1) provide Class Vehicles fit for the ordinary purpose for which they were sold; and (2) repair and correct manufacturing defects or defects in materials or workmanship of any parts they supplied, including the InControl Defect.  Because the InControl Defect was present at the time of sale or lease of the Class Vehicles, Defendant is required to repair or replace the systems or vehicles under the terms of the warranties.

63.     Defendant provide an express "New Vehicle Limited Warranty" and "Approved Certified Pre-owned Warranty" in connection with the sale (by purchase or lease) of each Class Vehicles (the "Limited Warranties").  Defendant promises to repair any defect or malfunction that arises in the vehicle during a defined period of time.  The Limited Warranties is provided by Defendant to the vehicle owner in writing and regardless of what state the customer purchased his or her vehicle in.  The relevant terms of the Limited Warranties are substantially similar

regardless of the model year.

64.     Plaintiff was provided with a Limited Warranty.

65.     In its Limited Warranty and in advertisements, brochures, and through other statements in the media, Defendant expressly warranted that it would repair or replace defects in material or workmanship free of charge if they became apparent during the warranty period.  The following language is the same for all vehicles in their respective warranty: "correct defects in factory-supplied materials or factory workmanship."

66.     For example, the Limited Warranty for a 2020 Land Rover Discovery provides:[16]

| WARRANTY STATEMENT: |
| --- |
| JLR warrants that during the warranty period, if a Land Rover vehicle is properly operated and maintained, repairs required to correct defects in factory-supplied materials or factory workmanship will be performed without charge upon presentment for service at a Land Rover retailer/authorized repairer; any component covered by this warranty found to be defective in materials or workmanship will be repaired, or replaced, without charge with a new or re-manufactured part distributed by JLR at its sole option. <br><br> The warranty period for the vehicle begins on the date of the first retail sale, or on the date of entry into demonstrator or company service, whichever occurs first. The basic warranty period is for four (4) years or until the vehicle has been driven 50,000 miles (80, 000 kilometres), whichever occurs first. <br><br> **Canada only**: Jaguar Land Rover Canada (JLRC) and your Land Rover retailer/authorized repairer are not responsible for any time that you lose, for any inconvenience you might be caused, for the loss of transportation, or for any other incidental or consequential damages you may have. |

| WARRANTY COVERAGE: |
| --- |
| The New Vehicle Limited Warranty covers any factory-supplied component of the Land Rover vehicle that is defective during the basic warranty period, with the exception of tires and items such as: <br><br> • Lubricants <br><br> • Normal maintenance items <br><br> • Regularly scheduled maintenance, parts and labor <br><br> • Wear parts, except as listed below <br><br> The warranty includes any part scheduled for routine replacement during the warranty period if it is defective. If a part fails at the same time it is due for replacement it is not covered by the warranty. |

---

[16] https://www.ownerinfo.landrover.com/document/3D/2020/T34770/36147_en_GBR/proc/G2360406

67. The duration of the New Limited Warranty is "4 years or 50,000 miles (whichever comes first) for Land Rovers and "5 years or 60,000 miles" for Jaguars. Both Jaguar and Land Rover Approved Certified Pre-owned vehicles are warrantied with the same terms, which "is added on top of the vehicle's new car warranty" and "covers repairs for sudden and unexpected mechanical or electrical failure" for 7 years or 100,000 miles, whichever comes first.

68. According to the terms of the Limited Warranties, the warranty is fully transferable to subsequent purchasers and begins on the date the vehicle is delivered to either the original purchaser or the original lessee. This language concerning the commencement of the Limited Warranty period is substantially similar for all Class Vehicles.

69. Despite actual and constructive knowledge of Class Vehicle defects as described in this complaint, Defendant failed to cure Class Vehicle defects within the express warranty period and thereby breached the terms of the express warranty.

70. Defendant deceived Plaintiff and Class members prior to and at the point of their purchase or lease of a Class Vehicle, including omissions in the owner's manual and the USA Warranty and Maintenance manuals.

71. Plaintiff's and Class members' Class Vehicles all contained the InControl Defect, whether latent or manifested, within the warranty period. However, despite the existence of the express warranties provided to Plaintiff and Class members, Defendant failed to honor the terms of the warranties by failing to adequately repair the defective part or replace it "free of charge."

## CLASS ACTION ALLEGATIONS

72. Plaintiff bring this action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(1), (b)(2) and/or (b)(3) on behalf of the following Class and Subclasses:

a. All persons or entities in the United States that purchased, leased, or own a 2018-2020 Jaguar or Land Rover equipped with the InControl Touch Pro or InControl Touch Pro Duo infotainment system (the "Nationwide Class" or "Class");

b. All persons or entities in New Jersey that that purchased, leased, or own a 2018-2020 Jaguar or Land Rover equipped with the InControl Touch Pro or InControl Touch Pro Duo infotainment system (the "New Jersey Subclass"); and

c. All persons or entities in Michigan that that purchased, leased, or own a 2018-2020 Jaguar or Land Rover equipped with the InControl Touch Pro or InControl Touch Pro Duo infotainment system (the "Michigan Subclass").

73. Subject to additional information obtained through further investigation and discovery, the foregoing definition of the Classes may be expanded or narrowed by an amended complaint, or narrowed at class certification.

74. Specifically excluded from the Classes are Defendant, Defendant's officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint ventures, or entities controlled by Defendant, and their heirs, successors, assigns, or other persons or entities related to or affiliated with Defendant and/or Defendant's officers and/or directors, the judge assigned to this action, and any member of the judge's immediate family.

75. **Numerosity.** The members of the proposed Classes are geographically dispersed throughout the United States and are so numerous that individual joinder is impracticable. Upon

information and belief, Plaintiff reasonably estimates that there are tens of thousands of individuals that are members of the proposed Classes. Although the precise number of proposed members is unknown to Plaintiff, the true number of Class members is known by Defendant. More specifically, Jaguar Land Rover North America LLC and its network of authorized dealers, maintains databases that contain the following information: (i) the name of each Class member that leased or purchased a vehicle; and (ii) the address of each Class member. Thus, Class members may be identified and notified of the pendency of this action by first class mail, electronic mail, and/or published notice, as is customarily done in consumer class actions.

76. **Existence and predominance of common questions of law and fact.** Common questions of law and fact exist as to all Class members and predominate over any questions affecting only individual Class members. These common legal and factual questions include, but are not limited to, the following:

    a. Whether there are defects in the InControl Touch Pro and InControl Touch Pro Duo Systems;

    b. Whether the InControl Touch Pro and InControl Touch Pro Duo Systems installed in the Class Vehicles contain a design defect and/or a defect in material, manufacturing and/or workmanship;

    c. Whether the InControl Touch Pro and InControl Touch Pro Duo Systems installed in the Class Vehicles present a safety risk;

    d. Whether Defendant knew or should have known that the InControl Touch Pro and InControl Touch Pro Duo Systems installed in the Class Vehicles are defective, have reduced usability, and/or prone to failure and present a safety risk;

e. Whether Defendant had a duty to disclose that InControl Touch Pro and InControl Touch Pro Duo Systems installed in the Class Vehicles are defective, have reduced usability, and/or prone to premature failure and present a safety risk;

f. Whether Defendant breached a duty to disclose that the InControl Touch Pro and InControl Touch Pro Duo Systems installed in the Class Vehicles are defective have reduced usability, and/or prone to premature failure and present a safety risk;

g. Whether Defendant intentionally and knowingly concealed, suppressed and/or omitted material facts including the fact that the InControl Touch Pro and InControl Touch Pro Duo Systems installed in the Class Vehicles are defective, have reduced usability, and/or prone to premature failure and present a safety risk;

h. Whether Defendant made material omissions concerning the standard, quality, or grade of the Class Vehicles and InControl Touch Pro and InControl Touch Pro Duo Systems; and

i. Whether Defendant is liable to Plaintiff and Class members for breaching its express and/or implied warranties.

77. **Typicality.** Plaintiff's claims are typical of the claims of the other Class members in that Plaintiff sustained damages arising out of the same illegal actions and conduct by Defendant.

78. **Adequacy of Representation.** Plaintiff will fairly and adequately protect the interests of Class members. Plaintiff have retained counsel that is highly experienced in complex

consumer class action litigation, and Plaintiff intend to vigorously prosecute this action on behalf of the Classes. Furthermore, Plaintiff have no interests that are antagonistic to those of the Classes.

79. **Superiority.** A class action is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by Class members is relatively small compared to the burden and expense of individual litigation of their claims against Defendant. It would, thus, be virtually impossible for Class members, on an individual basis, to obtain effective redress for the wrongs committed against them. Furthermore, even if Class members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances.

80. In the alternative, the Class and Subclasses may also be certified because: (a) the prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudication with respect to individual Class members that would establish incompatible standards of conduct for the Defendant; (b) the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other members of the Classes not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and/or (c) Defendant has acted or refused to act on grounds generally applicable to the

Class and Subclasses whole, thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the Classes as a whole.

**CLAIMS FOR RELIEF**

### COUNT I
**Breach Of Express Warranty**

81.     Plaintiff incorporates and realleges each preceding paragraph as though fully set forth herein.

82.     Jaguar Land Rover North America LLC issued vehicle warranties, namely on the window sticker and in the Limited Warranty, as alleged in more detail above.

83.     Defendant placed its Class Vehicles into the stream of commerce with the intent they be purchased by Plaintiff and Class Members.

84.     Defendant expressly warranted the Class Vehicles against defects when first sold to retail purchasers.

85.     The terms of the warranties at issue here became part of the basis of the bargain between Plaintiff and all other Class Members when deciding to purchase a Class Vehicle. Additionally, in connection with the purchase or lease of each of the Class Vehicles, Defendant provided warranty coverage for the Class Vehicles under one or more manufacturer's warranties. Defendant provides: (1) the New Vehicle Limited Warranty, which "correct defects in factory-supplied materials or factory workmanship" for 4 years or 50,000 miles (whichever comes first); and (2) the Approved Certified Pre-owned warranty which "is added on top of the vehicle's new car warranty" and "covers repairs for sudden and unexpected mechanical or electrical failure" for 7 years or 100,000 miles (whichever comes first). Both warranties are fully transferable to subsequent purchasers. Under the warranties provided to Plaintiff and Class members, Defendant promised to repair or replace the infotainment systems, at no cost to owners and lessors of the

35

Class Vehicles.

86.     Defendant is a merchant or lessor under the applicable law.

87.     The Class Vehicles are and were at all relevant times "goods" under the applicable law.

88.     Defendant breached its respective warranties with respect to the Class Vehicles: (1) each time they sold Class Vehicles in a defective state to the first retail purchasers; (2) each time their authorized service representatives failed to properly repair, replace, or adjust malfunctioning Class Vehicles to a non-defective state.

89.     As a result of the Defect, the Class Vehicles are defective and did not adhere to warranties issued by the Defendant.

90.     By breaching the express warranties, Defendant caused and continue to cause these warranties to fail of their essential purpose.

91.     Defendant has been given a reasonable opportunity to cure their respective breaches and/or Plaintiff and Class Members were not required to do so because such an opportunity would be futile.  Defendant has known about the Defect for many years and failed to repair or replace Class Vehicles as originally warranted.

92.     As a direct and proximate result of the breaches alleged in this Complaint, Plaintiff and Class Members have suffered damages in an amount to be determined at trial.

93.     Plaintiff, individually and on behalf of the Classes, seek all damages permitted by law, including compensation for the monetary difference between the Class Vehicles as warranted and as sold; compensation for the reduction in resale value; compensation for out-of-pocket repairs and service; towing charges incurred as a result of the Class Vehicles breakdowns; the cost of purchasing, leasing, or renting replacement vehicles; along with all other incidental

and consequential damages, statutory damages, attorney's fees, and all other relief allowed by law.

**COUNT II**
**Breach Of Implied Warranty**

94.     Plaintiff incorporates and realleges each preceding paragraph as though fully set forth herein.

95.     Plaintiff and Class members purchased or leased the Class Vehicles from Defendant by and through Defendant's authorized agents for retail sales, or were otherwise expected to be the eventual purchasers of the Class Vehicles when bought from a third party.  At all relevant times, Defendant was the manufacturer, distributor, warrantor, and/or seller of Class Vehicles.  Defendant knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased.

96.     Defendant is and was at all relevant times a merchant, seller and lessor of motor vehicles as defined under the Uniform Commercial Code.

97.     The Class Vehicles are and were at all relevant times goods within the meaning of the Uniform Commercial Code.

98.     Defendant impliedly warranted that the Class Vehicles were in merchantable condition and fit for the ordinary purpose of providing safe and reliable transportation.

99.     The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose of providing safe and reliable transportation.  The Class Vehicles contain an inherently defective infotainment system (at the time of sale or lease and thereafter) and present an undisclosed safety risk to drivers and occupants due to the Defect.  Thus, Defendant breached its implied warranty of merchantability.

100.     Defendant knew that the Class Vehicles were inherently defective and did not

conform to their warranties, and Defendant wrongfully and fraudulently mispresented and/or concealed material facts regarding the Class Vehicles. Plaintiff and Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

101. As a direct and proximate result of Defendant's breach of the implied warranty of merchantability, Plaintiff and members of the Classes have been damaged in an amount to be proven at trial.

## COUNT III
## Violation Of The Magnuson-Moss Warranty Act ("MMWA")

102. Plaintiff incorporates and realleges each preceding paragraph as though fully set forth herein.

103. Plaintiff and Class members are "consumers" within the meaning of the MMWA, 15 U.S.C. § 2301(3).

104. Defendant is a "supplier" and "warrantor" within the meaning of the MMWA, 15 U.S.C. § 2301(4)-(5).

105. The Class Vehicles are "consumer products" within the meaning of the MMWA, 15 U.S.C. § 2301(1).

106. The MMWA provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty. *See* 15 U.S.C. § 2310(d)(1).

107. Defendant provided Plaintiff and Class members with one or more express warranties, which are covered under 15 U.S.C. § 2301(6). Defendant provides: (1) the New Vehicle Limited Warranty, which "correct defects in factory-supplied materials or factory workmanship" for 4 years or 50,000 miles (whichever comes first); and (2) the Approved Certified Pre-owned warranty which "is added on top of the vehicle's new car warranty" and "covers repairs for sudden and unexpected mechanical or electrical failure" for 7 years or

100,000 miles (whichever comes first). Both warranties are fully transferable to subsequent purchasers. Under the warranties provided to Plaintiff and Class members, Defendant promised to repair or replace the infotainment systems, at no cost to owners and lessors of the Class Vehicles.

108. Defendant's express warranties are written warranties within the meaning of the MMWA, 15 U.S.C. § 2301(6). The Class Vehicles' implied warranties are covered under 15 U.S.C. § 2301(7).

109. Defendant breached these warranties as described in more detail above. Without limitation, the Class Vehicles share a common defect in design, material, manufacturing and/or workmanship that is prone to premature failure and fails to operate as intended.

110. Plaintiff and Class members have had sufficient direct dealings with Defendant or their agents (dealerships) to establish privity of contract between Defendant, on the one hand, and Plaintiff and Class members, on the other hand.

111. Defendant has been provided a reasonable opportunity to cure their breach of written warranties, and any further opportunities would be unnecessary and futile, as confirmed by the fact that Defendant took no corrective action after receiving a pre-suit notice letter from the named Plaintiff. At the time of sale or lease of each Class Vehicle and all relevant times thereafter, Defendant knew or should have known of the material omissions concerning the standard, quality or grade of the Class Vehicles and the existence of the Defect, but failed to repair or replace the infotainment systems. Likewise, Defendant failed to disclose the Defect.

112. Plaintiff and Class members would suffer economic hardship if they returned their Class Vehicles but did not receive the return of all payments made by them to Defendant. Thus, Plaintiff and Class members have not re-accepted their Class Vehicles by retaining them.

113.     The amount in controversy of Plaintiff's individual claims meets or exceeds the

sum of $25.  The amount in controversy of this action exceeds the sum of $50,000, exclusive of

interest and costs, computed on the basis of all claims to be determined in this lawsuit.

114.     Plaintiff, individually and on behalf of Class members, seek all damages

permitted by law, including diminution in the value of the Class Vehicles, in an amount to be

proven at trial.

**COUNT IV**
**Unjust Enrichment**

115.     Plaintiff incorporates and realleges each preceding paragraph as though fully set

forth herein.

116.     To the extent required by law, this claim is pled in the alternative to the other

legal claims alleged in the complaint, as permitted under Federal Rule of Civil Procedure 8.

117.     Plaintiff and members of the Classes conferred a benefit on Defendant by leasing

or purchasing the Class Vehicles.  Defendant was reasonably expected to provide Class Vehicles

free from the InControl Defect.

118.     Defendant unjustly profited from the lease and sale of the Class Vehicles at

inflated prices as a result of their false representations, omissions and concealment of the Defect

in the Class Vehicles.  Defendant benefited, at Plaintiff's expense, when it sold or leased Plaintiff

a vehicle that was inferior to the vehicle Plaintiff thought they were purchasing, yet the price

they paid was the price for a supposedly better functioning vehicle they thought they were

purchasing.

119.     As a proximate result of Defendant's omissions and concealment of the Defect in

the Class Vehicles, and as a result of Defendant's ill-gotten gains, benefits and profits, Defendant

has been unjustly enriched at the expense of Plaintiff and members of the Classes.  It would be

inequitable for Defendant to retain its ill-gotten profits without paying the value thereof to Plaintiff and members of the Classes.

120.     There is a direct relationship between Defendant on the one hand, and Plaintiff and class members on the other, sufficient to support a claim for unjust enrichment.  Defendant, failed to disclose the Defect to improve retail sales, which in turn improved wholesale sales.  Conversely, Defendant knew that disclosure of the Defect would suppress retail and wholesale sales of the Class Vehicles, suppress leasing of the Class Vehicles, and would negatively impact the reputation of Defendant's brand among Plaintiff and class members.  Defendant also knew its concealment and suppression of the InControl Defect would discourage Plaintiff and Class members from seeking replacement or repair of the infotainment systems, thereby increasing profits and/or avoiding the cost of such replacement or repairs.

121.     Plaintiff and members of the Classes are entitled to restitution in the amount of Defendant's ill-gotten gains, benefits and profits, including interest, resulting from their unlawful, unjust and inequitable conduct.

122.     Plaintiff and members of the Classes seek an order requiring Defendant to disgorge its gains and profits to Plaintiff and members of the Classes, together with interest, in a manner to be determined by the Court.

## COUNT V
### Breach Of Implied Covenant Of Good Faith And Fair Dealing

123.     Plaintiff incorporates and realleges each preceding paragraph as though fully set forth herein.

124.     Each contract of sale and lease agreement entered by Plaintiff and Class Members for the purchase or lease of the Class Vehicles contains an implied term requiring Defendant to

adhere to a duty of good faith and fair dealing.

125.    Defendant breached its duty of good faith and fair dealing by failing to notify Plaintiff and class members of the InControl Defect, and failing to fully and properly repair the defect, at no expense to Plaintiff and class members.

126.    During repair visits, Defendant failed and continues to fail to alert customers to the fact that the InControl Infotainment Systems are defective.  To the extent any repair efforts are made, Defendant does not disclose that it has no remedy for the InControl Defect, and that the defect will likely manifest again in the future.

127.    Defendant's breach of their implied duty of good faith and affair dealing is intentional, malicious, and with willful and wanton disregard of the rights and interests of Plaintiff and class members.  Defendant's conduct prevented owners of the Class Vehicles to receive the fruits of the contract.  In so doing, Defendant acted in bad faith.

128.    As a direct and proximate result of Defendant's breach of implied duty of good faith and fair dealing, Plaintiff and class members suffered damages, including but not limited to costly repairs, loss of use of the vehicle, loss in value and resale value of the vehicle and other damages in an amount to be determined at trial.

## COUNT VI

### Violation Of The New Jersey Consumer Fraud Act ("NJCFA")

129.    Plaintiff incorporates and realleges each preceding paragraph as though fully set forth herein.

130.    Plaintiff and New Jersey Class Members have suffered an injury in fact and lost money or property as a result of Defendant's violations of New Jersey's Consumer Fraud Act ("NJCFA").

131.     The NJCFA protects consumers from "any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission, in connection with the sale or advertisement of any merchandise . . . ." N.J. Stat. Ann. § 56:8-2.

132.     Plaintiff and Class Members are consumers who purchased and/or leased Class Vehicles for personal, family or household use.

133.     Defendant has engaged in conduct that is unlawful, unfair and offends public policy by rushing unsafe AEB systems to market and withholding material information about the dangers of the AEB system from consumers.

134.     Defendant did not fully and truthfully disclose to their customers the true nature of the InControl Defect in the Class Vehicles, nor was this defect readily discoverable at the time of purchase or lease.

135.     Defendant intended that Plaintiff and the Class Members rely on their acts of concealment and omission, so that they would purchase and/or lease the Class Vehicles.

136.     Accordingly, Defendant has engaged in unfair and deceptive trade practices, including representing that the Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that the Class Vehicles are of a particular standard and quality when they are not; advertising Class Vehicles with the intent to not sell them as advertised; and otherwise engaging in conduct likely to deceive.  Further, Defendant's acts and practices described herein offend established public policy because of the harm they cause to consumers, motorists, and pedestrians outweighs any benefit associated with such practices, and because Defendant fraudulently concealed the defective nature of the Class Vehicles from consumers.

137.    Defendant's actions as set forth above occurred in the conduct of trade or commerce.

138.    By engaging in the above-described practice and the actions and omissions herein alleged, Defendant has committed one or more unlawful acts in violation of the NJCFA.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, respectfully requests that this Court enter judgment against Defendant and in favor of Plaintiff and the Class and Subclasses, and award the following relief:

   a.   An order certifying this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, declaring Plaintiff as representatives of the Class and Subclasses, and Plaintiff's counsel as counsel for the Class and Subclasses;

   b.   An order awarding declaratory relief and enjoining Defendant from continuing the unlawful, deceptive, fraudulent, harmful, and unfair business conduct and practices alleged herein;

   c.   Injunctive and equitable relief in the form of a comprehensive program to repair or replace the infotainment systems in all Class Vehicles, and/or buyback all Class Vehicles, and to fully reimburse and make whole all Class and Subclass members for all costs and economic losses;

   d.   A declaration that Defendant is financially responsible for all Class notice and the administration of Class relief;

   e.   An order awarding costs, restitution, disgorgement, punitive damages, treble damages and exemplary damages under applicable law, and compensatory damages for economic loss and out-of-pocket costs in an amount to be determined

at trial;

f.  An order awarding any applicable statutory and civil penalties;

g.  A declaration that Defendant is required to engage in corrective advertising;

h.  An order requiring Defendant to pay both pre- and post-judgment interest on any amounts awarded;

i.  An award of costs, expenses and attorneys' fees as permitted by law; and

j.  Such other or further relief as the Court may deem appropriate, just, and equitable.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable of right.

Dated: December 1, 2020                Respectfully submitted,

**BURSOR & FISHER, P.A.**

By:_____*/s/ Frederick J. Klorczyk III*_____
                Frederick J. Klorczyk III

Frederick J. Klorczyk III
Joel D. Smith (*pro hac vice* forthcoming)
1990 North California Blvd., Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
Email:  fklorczyk@bursor.com
             jsmith@bursor.com

**BARBAT MANSOUR SUCIU & TOMINA PLLC**
Nick Suciu (*pro hac vice* forthcoming)
6905 Telegraph Rd. Suite 115
Bloomfield Hills, MI 48301
Tel: (313) 303-3472
Email: nicksuciu@bmslawyers.com

*Attorneys for Plaintiff*

45